IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:16-CV-191-FL

| | |
|---|---|
| SANDRA E. WOODLIEF, ) | |
| ) | |
| Plaintiff/Claimant, ) | |
| ) | |
| ) | **MEMORANDUM AND** |
| v. ) | **RECOMMENDATION** |
| ) | |
| NANCY A. BERRYHILL, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on the parties' cross-motions for judgment on the pleadings [DE-12, -16] pursuant to Fed. R. Civ. P. 12(c). Claimant Sandra E. Woodlief ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of her application for a period of disability and Disability Insurance Benefits ("DIB"). Claimant responded to Defendant's motion [DE-19] and filed a notice of supplemental authority [DE-21, -22] and the time for filing a reply has expired. Accordingly, the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, it is recommended that Claimant's Motion for Judgment on the Pleadings be denied, Defendant's Motion for Judgment on the Pleadings be allowed, and the final decision of the Commissioner be upheld.

## I. STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability and DIB on October 8, 2012, alleging disability beginning October 3, 2012. (R. 10, 138–39). Her claim was denied initially and upon reconsideration. (R. 10, 44–63). A hearing before the Administrative Law Judge ("ALJ")

was held on September 22, 2014, at which Claimant was represented by counsel and a vocational expert ("VE") appeared and testified. (R. 10, 23–43). On December 12, 2014, the ALJ issued a decision denying Claimant's request for benefits. (R. 7–22). On February 22, 2016, the Appeals Council denied Claimant's request for review. (R. 1–4). Claimant then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling*

*Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

### III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 404.1520 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 404.1520a(b)–(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* § 404.1520a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 404.1520a(e)(3).

In this case, Claimant alleges that the ALJ erred by failing to conduct a function-by-function analysis and omitting Claimant's standing and walking limitations from the resulting RFC, and by failing to properly weigh the medical opinion evidence. Pl.'s Mem. [DE-13] at 5–13.

3

## IV. FACTUAL HISTORY

### A. ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant was no longer engaged in substantial gainful employment. (R. 12). Next, the ALJ determined Claimant had the following severe impairments: diabetes mellitus and degenerative disc disease of the lumbar spine with right lower extremity radiculopathy. *Id.* The ALJ also found Claimant had a nonsevere impairment of anxiety. *Id.* However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 13–14). Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in no limitations in her activities of daily living, mild limitation in social functioning and concentration, persistence, or pace, and no episodes of decompensation. (R. 13).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform the full range of light work.[1] In making this assessment, the ALJ found Claimant's statements about her limitations not fully credible. (R. 15–17). At step four, the ALJ concluded Claimant had the RFC to perform the requirements of her past relevant work. (R. 18).

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. § 404.1567(b).

## V. DISCUSSION

### A. The ALJ's RFC Determination

Claimant argues that the ALJ erred by failing to conduct a function-by-function analysis and omitting Claimant's standing and walking limitations from the resulting RFC. Pl.'s Mem. [DE-13] at 5–8. In particular, Claimant argues that the ALJ failed to perform a specific analysis of Claimant's ability to stand and walk, does not explain how Claimant's activity level is inconsistent with her alleged limitations, did not explain which of Claimant's complaints he credited in assigning the RFC, and asked the VE about a sit/stand option but did not explain why one was unnecessary in the RFC. *Id.* The Commissioner contends that substantial evidence supports the ALJ's RFC determination, and Claimant's allegations of back pain and related limitations are not supported by the medical record. Def.'s Mem. [DE-17] at 11–14. In response, Claimant argues that the ALJ failed to explain how he determined that Claimant could stand and walk six hours out of an eight hour work day, as the ALJ simply summarizes the medical evidence without further discussion, and points to *Mitchell v. Colvin*, No. 5:15-CV-00209-F, 2016 WL 4063741 (E.D.N.C. July 11, 2016), *adopted by* 2016 WL 4059348 (July 28, 2016), in support of her argument. Pl.'s Resp. [DE-19] at 1–4. Additionally, Claimant filed a notice of supplemental authority based on *Lewis v. Berryhill*, 858 F.3d 858 (4th Cir. 2017). [DE-21, -22].

An individual's RFC is the capacity an individual possesses despite the limitations caused by physical or mental impairments. 20 C.F.R. § 404.1545(a)(1); *see also* S.S.R. 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The RFC is based on all relevant medical and other evidence in the record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. § 404.1545(a)(3); *see also* S.S.R. 96-8p, 1996 WL 374184, at *5. Where a claimant has

5

numerous impairments, including non-severe impairments, the ALJ must consider their cumulative effect in making a disability determination. 42 U.S.C. § 423(d)(2)(B); *see Hines v. Bowen*, 872 F.2d 56, 59 (4th Cir. 1989) ("[I]n determining whether an individual's impairments are of sufficient severity to prohibit basic work related activities, an ALJ must consider the combined effect of a claimant's impairments.") (citations omitted). The ALJ has sufficiently considered the combined effects of a claimant's impairments when each is separately discussed by the ALJ and the ALJ also discusses a claimant's complaints and activities. *Baldwin v. Barnhart*, 444 F. Supp. 2d 457, 465 (E.D.N.C. 2005) (citations omitted). The RFC assessment "must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." S.S.R. 96-8p, 1996 WL 374184, at *7.

In *Mascio v. Colvin*, the Fourth Circuit explained that Ruling 96-8p requires the ALJ to "'first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations." 780 F.3d 632, 636 (4th Cir. 2015) (footnote omitted) (quoting S.S.R. 96-8p). The ruling further requires "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* (quoting S.S.R. 96-8p). "Only after such a function-by-function analysis may an ALJ express RFC 'in terms of the exertional levels of work.'" *Monroe v. Colvin*, 826 F.3d 176, 179 (4th Cir. 2016) (quoting *Mascio*, 780 F.3d at 636 (quoting S.S.R. 96-8p)).

Here, the ALJ failed to perform a function-by-function analysis. (R. 14–18). However, the Fourth Circuit has rejected "a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis." *Mascio*, 780 F.3d at 636. Rather, the court explained that

"[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Id.* (citation omitted). Therefore, despite the ALJ's failure to conduct the function-by-function analysis, the court must look to the ALJ's RFC discussion to determine whether it otherwise provides a sufficient basis for meaningful review.

Claimant contends the ALJ failed to justify the RFC determination and that she is not capable of performing light work due to difficulty with prolonged standing and walking and needing to frequently change position due to leg pain and weakness. Pl.'s Mem. [DE-13] at 5–8. Claimant argues that the ALJ failed to explain how the medical evidence discredits her complaints or how her activity level is inconsistent with her claimed limitations. *Id.* In support of her argument, Claimant cites to certain medical treatment notes. *Id.* at 6 (citing R. 201–04, 207, 212, 276, 391–92). While Claimant does not specifically allege an amount of time that she can stand and walk in the briefing, at the hearing she testified that she could stand for 30 to 40 minutes before needing to sit down, and stand for one to two hours at the most during a work day. (R. 30, 36).

The ALJ concluded that Claimant can perform the full range of light work. (R. 14). In making this determination, the ALJ thoroughly considered Claimant's descriptions of her limitations, the medical treatment records, and the opinion evidence, including the medical records identified by Claimant, and specifically addressed Claimant's back and leg pain. (R. 14–18).

The ALJ first summarized Claimant's hearing testimony, including her allegations that her back pain began in 2011 and worsened over time; she has difficulty standing and bending and can stand for 30 to 40 minutes before needing to sit; her treating provider restricted her to lifting 20 pounds and Claimant can lift 20 pounds at a time but not for the entire day; the day before the

7

hearing, Claimant woke up, checked her blood sugar, took a shower, attended church, and made dinner for her family; she can perform most household activities, but at her own pace; on a weekday, she will go to the grocery store, make beds, sleep, and do laundry; she has trouble sleeping due to pain; and she can stand for one to two hours. (R. 14–15); *see* (R. 23–43) (Claimant's hearing testimony reflecting same).

Next, the ALJ addressed the medical records related to Claimant's back and leg pain, determining that "overall the evidence of record does not support the degree of limitation alleged." (R. 15). The ALJ specifically mentioned many of the medical records cited by Claimant in support of her argument. In September 2012, Claimant had no motor or sensory defects, straight leg raise testing was negative bilaterially, Claimant had a normal gait, x-rays revealed multilevel degenerative disc disease most severe at L5-S1, and Claimant was given a trigger point injection on her right side. (R. 15) (citing R. 201–03). Claimant again received a trigger point injection in November 2012, and Heather Montogomery ("Montgomery"), a nurse practitioner, noted that Claimant's physical examination remained unchanged, recommended that Claimant only work 20 hours per week and do no lifting above 20 pounds, and suggested physical therapy. (R. 15) (citing R. 204–06). In November 2012, Claimant reported improvement due to the restrictions at work but continued to have some leg pain, and Montgomery prescribed a different pain medication. (R. 15) (citing R. 207–09). The ALJ then discussed a February 2013 visit where Claimant reported working six hours a day for three days a week but complained of increased weakness in her legs, and noted that Montgomery reported Claimant's physical examination was unchanged and Claimant was more interested in discussing a leave of absence at work than pursuing the recommended physical therapy. (R. 15) (citing R. 212–14).

8

At an April 2013 consultative examination, Dr. Morris observed that Claimant could sit comfortably throughout the interview, could ambulate and get on and off of the exam table without assistance, had a slightly slow and antalgic gait, had slight difficulty with heel, toe, and tandem walking, had difficulty with squatting and kneeling, and had no straight leg raising positivity on the left side and complained of increased back and right leg pain when her right leg was elevated, but did not look like she was in pain. (R. 15–16); *see* (R. 269–74) (also opining that Claimant could stand, sit, and walk for six hours in an eight-hour work day). The ALJ noted that after the consultative examination, "the medical evidence of record documents ongoing conservative treatment with little change in physical exam results." (R. 16). Indeed, a May 2013 MRI revealed degenerative disc disease at L5-S1 with central and right paracentral disc herniation. (R. 16) (citing R. 391); *see* (R. 392) (noting that Claimant had "marked degenerative disc disease changes of L5-S1."). In May 2013, Montgomery instructed Claimant's employer that she should perform sit-down work only for one month; Claimant received an epidural steroid injection; and afterwards Montgomery wrote another note instructing that Claimant should remain out of work until July 9, 2013. (R. 16) (citing R. 275–80).

On May 30, 2013, Claimant rated her pain as an 8/10 after the injection and reported trouble sleeping, but Montgomery noted that Claimant's lumbar exam was unchanged, Claimant was in no acute distress, and Claimant was ambulating without assistance and with a normal gait. (R. 16) (citing R. 385–89). The ALJ noted that Claimant did not return to see Montgomery until January 2014, where Claimant reported left lower back pain radiating down her leg, was in no acute distress, could ambulate fully without assistance, straight leg raise testing was negative bilaterally, and she received a left SI trigger point injection. (R. 16) (citing R. 380–81). Finally, in August 2014,

9

Montgomery noted that Claimant could rise from a seated position appropriately, had limited lumbar mobility, straight leg raises were negative bilaterally, and no focal motor sensory deficits were observed.[2] (R. 16) (citing R. 517–19) (also noting that trigger point injections worked in the past but Claimant declined one that day due to uncontrolled blood sugar).

The ALJ found that Claimant's symptoms were not as limiting as alleged, based on the fact that she continued to work part time after filing for disability, because her activities of daily living were inconsistent with the severe limitations she claimed, the medical record evidence documented that Claimant received conservative treatment, and Claimant's physical examination results remained stable. (R. 17). Specifically, the ALJ concluded that while "the evidence of record indicates that the [C]laimant has symptoms that result in some degree of physical functional limitations, these are not so severe as to preclude all work activity." (R. 18). Claimant has pointed to no evidence in support of her claimed limitations in standing and walking that the ALJ failed to consider, and the court may not re-weigh the evidence and substitute its own conclusions for those of the Commissioner. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Additionally, the ALJ appropriately considered the conservative nature of the treatment Claimant received, as the record reveals she was consistently recommended physical and aquatic therapy, pain medications, and steroidal injections. *See Dunn v. Colvin*, 607 F. App'x 264, 275 (4th Cir. June 1, 2015) ("[I]f all that the claimant needs is conservative treatment, it is reasonable for an ALJ to find that the alleged disability is not as bad as the claimant says that it is."); *Richardson v. Colvin*, No. 4:14-CV-00125-FL, 2015 WL 5725546, at *6 (E.D.N.C. Aug. 11, 2015) (concluding that

---

[2] The ALJ mistakenly stated that at the August 2014 visit Claimant was in acute distress, (R. 16), but the treatment note states that Claimant was in no acute distress during that visit, (R. 518).

conservative treatment lends little support to claims of debilitating symptoms), *adopted by* 2015 WL 5737613 (E.D.N.C. Sept. 30, 2015). This is not a situation where the ALJ has mischaracterized Claimant's treatment history as conservative, contravening the serious treatment documented in the record. *See Lewis*, 858 F.3d at 868–69 (determining that the ALJ erred by characterizing the claimant's treatment as conservative where her conditions required the use of powerful pain medication and she "endured multiple surgeries, one of which required removal of her first left rib to alleviate pain. Before those surgeries, Lewis underwent a lumbar epidural injection, two supraspinatus nerve blocks, and a radiofrequency ablation of her supraspinatus nerve.").

Claimant's additional arguments regarding the RFC determination are without merit. While Claimant argues that the ALJ fails to explain how he concluded that she could stand and walk for six hours out of an eight-hour work day, Pl.'s Resp. [DE-19] at 2, the ALJ gave great weight to the consultative examiner's opinion that Claimant could stand and walk for that amount of time because it was consistent with the examiner's clinical findings and those of Claimant's treating providers (R. 17). Despite Claimant's argument to the contrary, this is not a case where the ALJ simply summarized the medical evidence and made findings without "build[ing] an accurate and logical bridge from the evidence to his conclusion . . . ." *Lewis*, 858 F.3d at 868 (quoting *Monroe*, 826 F.3d at 189). Moreover, *Mitchell* is distinguishable from the instant case because there, the record contained contradictory evidence which the ALJ failed to address. *See Mitchell*, 2016 WL 4063741, at *5–7. Again, Claimant has cited no contradictory evidence not considered by the ALJ and the court may not re-weigh the evidence already considered. *Hays*, 907 F.2d at 1456. Finally, Claimant argues that the ALJ erred by asking the VE a hypothetical question involving a sit/stand option without expressly stating why such an option was not needed in the RFC. Pl.'s Mem. [DE-13] at

11

7–8. However, an ALJ is permitted to ask a VE multiple hypotheticals, even if they are contradictory, as such hypothetical questions are not findings of fact, and it is entirely permissible for the ALJ to determine after the hearing which hypothetical is supported by the record evidence. *Davis v. Apfel*, 162 F. 3d 1154, 1998 WL 559728, at *2 (4th Cir. 1998) (Table); *Sizemore v. Colvin*, No. 5:15-CV-00053-MOC, 2016 WL 483140, at *4 (W.D.N.C. Feb. 5, 2016).

As such, despite the ALJ's failure to conduct a function-by-function analysis, the ALJ's RFC assessment does not frustrate meaningful review. The evidence cited by Claimant does not support any additional restrictions on Claimant's ability to walk and stand and substantial evidence supports the ALJ's determination that Claimant can perform light work. *See Richardson v. Berryhill*, No. 5:16-CV-83-BO, 2017 WL 605287, at *2 (E.D.N.C. Feb. 14, 2017) (distinguishing *Mascio* and finding remand unnecessary despite the ALJ's failure to conduct a function-by-function analysis where the ALJ sufficiently addressed the relevant limitations and functional capacities). Accordingly, the ALJ's failure to conduct the function-by-function analysis does not require remand in this case.

## B. The ALJ's Consideration of the Medical Opinion Evidence

Claimant contends that the ALJ erred in weighing the medical opinion evidence. Pl.'s Mem. [DE-13] at 9–13. Specifically, Claimant argues that the ALJ did not perform the requisite analysis when discounting Montgomery's work restrictions, failed to mention the opinion of Dr. Smoot, and did not properly weigh the opinions of the consultative examiner and the state agency doctors. *Id.* In response, the Commissioner argues that substantial evidence supports the ALJ's consideration of the medical opinion evidence. Def.'s Mem. [DE-17] at 5–11. Claimant counters that Defendant's arguments amount to an impermissible post-hoc rationalization and the ALJ failed to explain

12

contradictory evidence in the record. Pl.'s Resp. [DE-19] at 4–7.

When assessing a claimant's RFC, the ALJ must consider the opinion evidence. 20 C.F.R. § 404.1545(a)(3). Regardless of the source, the ALJ must evaluate every medical opinion received. *Id.* § 404.1527(c). In general, the ALJ should give more weight to the opinion of an examining medical source than to the opinion of a non-examining source. *Id.* § 404.1527(c)(1). Additionally, more weight is generally given to opinions of treating sources, who usually are most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability, than non-treating sources such as consultative examiners. *Id.* § 404.1527(c)(2). When the opinion of a treating source regarding the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" it is given controlling weight. *Id.* However, "[i]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590.

If the ALJ determines that a treating physician's opinion should not be considered controlling, the ALJ must then analyze and weigh all of the medical opinions in the record, taking into account the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist. *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). The weight afforded such opinions must be explained. S.S.R. 96-2p, 1996 WL 374188, at *5 (July 2, 1996); S.S.R. 96-6p, 1996 WL 374180, at *1 (July 2, 1996). An ALJ may not reject medical evidence for the wrong reason or no reason. *See Wireman v. Barnhart*, No. 2:05-CV-46,

2006 WL 2565245, at *8 (W.D. Va. Sept. 5, 2006). "In most cases, the ALJ's failure to consider a physician's opinion (particularly a treating physician) or to discuss the weight given to that opinion will require remand." *Love-Moore v. Colvin*, No. 7:12-CV-104-D, 2013 WL 5350870, at *2 (E.D.N.C. Sept. 24, 2013) (citations omitted).

### 1. Montgomery's Work Restrictions

Claimant argues that the ALJ discounted Montgomery's work restrictions because she is not an acceptable medical source and because the clinical findings did not support the restrictions, but did not provide sufficient analysis of how the medical records contradict the work restrictions. Pl.'s Mem. [DE-13] at 10–11. According to Claimant, the medical records contain objective findings that support the restrictions, such as the MRI showing marked degenerative disc disease, repeated complaints of weakness, and Claimant's improvement when she restricted her hours at work. *Id.*

Montgomery, an orthopaedic nurse practitioner, issued a series of temporary work restrictions during Claimant's course of treatment for pain management. *See* (R. 221) (Oct. 3, 2012 treatment note restricting Claimant to light duty (no more than 20 hours a week and no lifting above 20 pounds) and planning to recheck Claimant's pain in a month, recommending physical therapy if Claimant's pain did not improve); (R. 207) (Nov. 7, 2012 treatment note documenting that Claimant improved on light duty but she was still experiencing some leg pain; Montgomery prescribed a different pain medication); (R. 387–89) (May 9, 2013 treatment note scheduling an MRI to rule out stenosis and recommending sit-down work only until after the MRI); (R. 279) (a May 9, 2013 note directing that Claimant be limited to sit-down work only for one month); (R. 280) (May 30, 2013 note directing that Claimant remain out of work until July 9, 2013); (R. 385–86) (May 30, 2013 treatment note documenting that Claimant's pain was an 8/10 after the steroidal injection, changing

14

her pain medication, and discussing treatment options going forward, including repeat steroidal injections or surgery); (R. 382–83) (July 24, 2013 treatment note with another provider at Montgomery's office noting that the steroidal injection helped but Claimant was still having some pain, stating that Claimant was not interested in surgery, and Claimant agreed to follow up in four to five weeks after trying physical therapy). Claimant was not seen by anyone at her orthopedic practice again until January 7, 2014, where received another steroidal injection, refilled her pain medication, and agreed to follow up as needed. (R. 380–81).

The ALJ discussed the restrictions imposed by Montgomery and weighed them as follows:

> Heather Montgomery's work restrictions, as detailed above, are given little weight because she is not considered an acceptable medical source for diagnosing medical conditions. To the extent her statements reflect the nature and severity of the claimant's symptoms and limitations, the undersigned gives them limited weight because they are not supported by her clinical findings, which document negative straight leg raise testing, intact gait, and only mild limitation of motor strength of her extremities. Additionally, despite stating [that claimant] should remain out of work through July 9, 2013, Ms. Montgomery does not indicate that she reevaluated the claimant's ability to return to work after this time.

(R. 17).

First, according to the regulations, a nurse practitioner is not considered an acceptable medical source. *See* 20 C.F.R. § 404.1513(a) (defining "acceptable medical sources" as licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists). Even so, "evidence from other sources" may be used "to show the severity of [a claimant's] impairment(s) and how it affects [his] ability to work." 20 C.F.R. § 404.1513(d); *see also* S.S.R. 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006) (explaining that opinions from "other [medical] sources . . . may provide insight into the severity of [a claimant's] impairment(s) and how it affects [a claimant's] ability to function"). As other medical sources "have

15

increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians," their opinions "are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." S.S.R. 06-03p, 2006 WL 2329939, at *3.

Here, although the ALJ noted that Montgomery was not an acceptable medical source, he went on to consider the consistency and supportability of the restrictions she imposed on Claimant's ability to work, in addition to the fact that some of the restrictions were temporary, which are appropriate considerations pursuant to the regulations. *See Johnson*, 434 F.3d at 654. As discussed above, the ALJ thoroughly summarized Claimant's treatment history and commented on the evidence identified by Claimant in support of her alleged limitations. *See* (R. 15–17). *Cf. Lewis*, 858 F.3d at 868 ("the ALJ's analysis has impermissible gaps when describing the opinions of Lewis' treating physician and her overarching medical history."). And while some of the evidence lends support to the alleged limitations based on Claimant's leg and back pain, there is more than a "scintilla of evidence" supporting the ALJ's decision that the restrictions imposed by Montgomery were not supported by the evidence. *See Dunn*, 607 F. App'x at 271 (concluding the ALJ did not err in affording limited weight to a treating source's opinion where "there is more than a 'scintilla of evidence' in the record supporting the ALJ's conclusion that [the physician's] opinion is incongruent with both his own treatment notes and some of the other medical evidence in the record."). Accordingly, the ALJ did not err in considering the restrictions imposed by Montgomery.

### 2. Dr. Smoot

Claimant argues that the ALJ ignored the opinion of Dr. Smoot, who took Claimant out of work entirely in May 2013 after performing a steroid injection. Pl.'s Mem. [DE-13] at 11; Pl.'s

16

Resp. [DE-19] at 6. The Commissioner argues that there was no medical opinion from Dr. Smoot for the ALJ to consider. Def.'s Mem. [DE-17] at 9.

Medical opinions are defined as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis, and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2). Therefore, "[o]nly those statements . . . that reflect judgments regarding a claimant's prognosis or limitations, or the severity of symptoms," and not those which merely report subjective complaints of the claimant's pain, constitute medical opinions as defined in the regulations. *Love-Moore v. Colvin*, No. 7:12-CV-104-D, 2013 WL 5366967, at *11 (E.D.N.C. Aug. 30, 2013) (citations omitted), *adopted by* 2013 WL 5350870 (Sept. 24, 2013). The record contains one treatment note from Dr. Smoot, dated May 14, 2013, which documents that Claimant demonstrated functional active lumbar range of motion, had no swelling or lumbrosacral spasms but did experience some soreness; the May 9, 2013 MRI revealed marked degenerative disc disease changes at L5-S1 and some disc herniation; previous x-rays showed no evidence of spondylolisthesis or scoliosis; recommending physical therapy and a home exercise program; Dr. Smoot prescribed percocet and scheduled a steroidal injection with instructions to follow up within one to two weeks; and stated that out of work restrictions are given. (R. 276). There are two notes in the record from Montgomery, directing that Claimant perform seated work only and that Claimant remain out of work for a specific period of time. (R. 279) (a May 9, 2013 note directing that Claimant be limited to sit-down work only for one month); (R. 280) (May 30, 2013 note directing that Claimant remain out of work until July 9, 2013).

17

The statement from Dr. Smoot's treatment note that "out of work restrictions are given" says nothing about Claimant's symptoms, diagnosis, prognosis, or functional limitations. (R. 276). Additionally, the ALJ specifically cited to the exhibit containing Dr. Smoot's treatment note and discussed the out of work restrictions imposed by Montgomery. (R. 16) (citing R. 275–80). Moreover, as the out of work restrictions in the record were all temporary, any failure to weigh Dr. Smoot's statement is not error where it relates to a restriction or condition that is "temporary in nature." *Carroll v. Colvin*, No. 7:14-CV-173-RJ, 2015 WL 5737625, at *12 (E.D.N.C. Sept. 30, 2015) (citing *Lamb v. Astrue*, No. 3:07-CV-789, 2008 WL 4890580, at *4 (E.D. Va. Nov. 12, 2008) (determining that the ALJ did not err in failing to weigh a temporary work limitation which was to last six months from the date of onset where that opinion was consistent with other record evidence as to the claimant's current condition and where that limitation was only temporary in nature)). Accordingly, Claimant's argument is without merit.

### 3. Consultative Examiners and State Agency Doctors

Claimant argues that the ALJ improperly weighed the opinion of Dr. Morris, a consultative examiner, and the state agency doctors. Pl.'s Mem. [DE-13] at 11–13. Specifically, Claimant argues there is no meaningful analysis of these doctors' opinions, as "[t]he ALJ summarily declared that these opinions were consistent with the evidence and were assigned weight to the degree they are consistent with the assigned RFC (and assigned little weight to the extent they are inconsistent)" and "[t]hat the ALJ would then declare that the portions of their opinions that support his RFC are accept[ed] and the portions that do not support his RFC are rejected is doubly arbitrary." *Id.* at 11–12. This argument misstates the ALJ's consideration of these opinions, however. As to Dr. Morris' opinion, the ALJ stated as follows:

Dr. Morris's opinion is given great weight because it is consistent with his clinical findings and those of the claimant's treating medical providers. His opinion is also consistent with the claimant's conservative treatment history and her reported activity level. The undersigned notes that Dr. Morris indicated the claimant could lift up to 50 pounds occasionally. This statement is given little weight because the longitudinal medical record documents mild to moderate ongoing back and leg pain. Additionally, his findings regarding right elbow tenderness are given ... little weight because the medical evidence of record indicates this was an acute symptom that resolved over time.

(R. 17). As to the state agency consultants, the ALJ stated:

On January 14, 2013, and May 1, 2013, at the initial and reconsideration levels respectively, State agency medical consultants Margaret Parrish, M.D., and Melvin Clayton, M.D., concluded the claimant could perform a full range of medium exertional work. The State agency medical consultants physical assessments are given partial weight because evidence received at the hearing level, including medical evidence documenting ongoing back and leg pain with mild reduced motor strength of her extremities and occasional positive straight leg raise testing, indicates the claimant is further limited to performing light exertional work.

(R. 17–18). Thus, where Claimant's argument misstates the ALJ's analysis, it is without merit and does not support remand.

## VI. CONCLUSION

For the reasons stated above, it is RECOMMENDED that Claimant's Motion for Judgment on the Pleadings [DE-12] be DENIED, Defendant's Motion for Judgment on the Pleadings [DE-16] be ALLOWED and the final decision of the Commissioner be UPHELD.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until **August 18, 2017** to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or

modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C. Any response to objections shall be filed within **14 days** of the filing of the objections.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation.** *See Wright v. Collins*, **766 F.2d 841, 846-47 (4th Cir. 1985).**

Submitted, this the 4 day of August 2017.

Robert B. Jones, Jr.
United States Magistrate Judge