IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:16-CV-00191-FL

| | |
|---|---|
| SANDRA E. WOODLIEF, | ) |
|              Plaintiff, | ) |
| v. | )     ORDER |
| NANCY A. BERRYHILL, | ) |
|   Acting Commissioner of Social Security, | ) |
|              Defendant. | ) |

This matter is before the court on the parties' cross motions for judgment on the pleadings. (DE 12, 16). Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), United States Magistrate Judge Robert B. Jones, Jr., entered memorandum and recommendation ("M&R"), wherein it is recommended that the court deny plaintiff's motion, grant defendant's motion, and affirm defendant's decision. Plaintiff timely filed objections to the M&R, and the issues raised are ripe for ruling. For the reasons that follow, the court adopts the M&R as its own, grants defendant's motion, denies plaintiff's motion, and affirms defendant's final decision.

## BACKGROUND

On October 8, 2012, plaintiff protectively filed an application for a period of disability and disability insurance benefits, alleging disability beginning October 3, 2012. The application was denied initially and upon reconsideration. Plaintiff filed a request for hearing before an administrative law judge ("ALJ"), who, after a September 22, 2014, hearing, denied plaintiff's claims by decision entered December 12, 2014. Following the ALJ's denial of her application, plaintiff timely filed a request for review, and the Appeals Council denied plaintiff's request for

review, leaving the ALJ's decision as defendant's final decision. Plaintiff then filed a complaint in this court on April 22, 2016, seeking review of defendant's decision.

## COURT'S DISCUSSION

A.  Standard of Review

The court has jurisdiction under 42 U.S.C. § 405(g) to review defendant's final decision denying benefits. The court must uphold the factual findings of the ALJ "if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence [is] . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quotations omitted). The standard is met by "more than a mere scintilla of evidence but . . . less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). In reviewing for substantial evidence, the court is not to "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for defendant's. Craig, 76 F.3d at 589.

"A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling," including "a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013). An ALJ's decision must "include a narrative discussion describing how the evidence supports each conclusion," Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (quoting Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015)), and an ALJ "must build an accurate and logical bridge from the evidence to his conclusion." Id. (quoting Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000)).

To assist it in its review of defendant's denial of benefits, the court may "designate a magistrate judge to conduct hearings . . . and to submit . . . proposed findings of fact and recommendations for the disposition [of the motions for judgment on the pleadings]." See 28 U.S.C. § 636(b)(1)(B). The parties may object to the magistrate judge's findings and recommendations, and the court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." Id. § 636(b)(1). The court does not perform a de novo review where a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir.1982). Absent a specific and timely filed objection, the court reviews only for "clear error," and need not give any explanation for adopting the M&R. Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir.1983). Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

The ALJ's determination of eligibility for Social Security benefits involves a five-step sequential evaluation process, which asks whether:

> (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a medical impairment (or combination of impairments) that are severe; (3) the claimant's medical impairment meets or exceeds the severity of one of the impairments listed in [the regulations]; (4) the claimant can perform [his or her] past relevant work; and (5) the claimant can perform other specified types of work.

Johnson v. Barnhart, 434 F.3d 650, 653 n.1 (4th Cir. 2005) (citing 20 C.F.R. § 404.1520). The burden of proof is on the claimant during the first four steps of the inquiry, but shifts to the Commissioner at the fifth step. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

In the instant matter, the ALJ performed the sequential evaluation. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since October 3, 2012. At step two, the ALJ found that plaintiff had the following severe impairments: diabetes mellitus and degenerative disc disease of the lumbar spine with right lower extremity radiculopathy. However, at step three, the ALJ further determined that these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listings in the regulations.

Before proceeding to step four, the ALJ determined that during the relevant time period plaintiff had the residual functional capacity ("RFC") to perform the full range of light work as defined in 20 C.F.R. § 404.1567(b).[1] At step four, the ALJ concluded plaintiff was able to perform past relevant work as cashier or checker. Thus, the ALJ concluded that plaintiff was not disabled under the terms of the Social Security Act.

B.     Analysis

Plaintiff argues the magistrate judge erred by 1) finding the ALJ built a logical bridge between the medical record summary and theALJ's conclusions regarding plaintiff's standing and walking limitation and 2) finding ALJ correctly weighed the opinions of two of plaintiff's doctors. The court will address each argument in turn below.

---

[1]"Light work" is defined as follows:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

1. Standing/Walking Limitations

At plaintiff's hearing before the ALJ, plaintiff testified that she can only stand for 30 to 40 minutes at a time before having to sit down. (Tr. 30). In finding that plaintiff can perform a full range of light work, the ALJ did not include any limitation regarding plaintiff's inability to stand for more than 30 to 40 minutes. Plaintiff argues that, regarding this limitation, the ALJ erred by not performing a function-by-function analysis and only summarized the medical records without offering the necessary explanation as required by Mascio and Monroe as to why this limitation was not addressed in the RFC. (DE 24 at 6-9).

An ALJ's RFC assessment must "identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions listed in the regulations." Mascio, 780 F.3d at 636 (citation omitted). The Fourth Circuit has "rejected a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis." Id. However, "remand may be appropriate where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." Id. (citation omitted).

Here, although the ALJ does not conduct a function by function analysis, it is apparent how the ALJ determined plaintiff's capacity to perform the relevant function. The ALJ noted plaintiff's testimony regarding her inability to stand for more than 30 to 40 minutes, summarized the medical records thoroughly, then turned to opinion evidence, giving great weight to the opinion of medical consultive examiner, Dr. Morris, who found that plaintiff "could stand, walk, and sit, six hours each during an eight-hour workday." (Tr. 17). This functional assessment provides support for the ALJ's

5

RFC determination and allows the court to conduct a meaningful review of the ALJ's analysis. The ALJ accorded Dr. Morris's report great weight because it was "consistent with [Dr. Morris's] clinical findings," it was consistent with plaintiff's "treating medical providers," and it was consistent with "claimant's conservative treatment history and her reported activity level." (Id.). The ALJ's credibility analysis of Dr. Morris's report following the summary of medical evidence provides a logical bridge between the evidence and the ALJ's RFC findings.[2]

Although the ALJ offers the above, which explains why plaintiff's testimony about her inability to stand was not included in the RFC, plaintiff argues further explanation is needed in that the ALJ never explains "how or why" the clinical findings and findings of plaintiff's treating medical providers are consistent with Dr. Morris's report or "what aspects of [plaintiff's] reported activity level show she can stand and walk six hours out of an eight hour day," stating that the ALJ never provided "specific clinical findings suggesting plaintiff can be on her feet all day." (DE 25 at 8-9).

First, the ALJ does address how the clinical findings and plaintiff's treating medical providers are consistent with the report but does so in two steps, finding that the medical evidence and plaintiff's reported activity do not support plaintiff's degree of limitation alleged and then finding the medical evidence and plaintiff's reported activity are consistent with Dr. Morris's report. (Tr. 15-16 (the ALJ provides an overview of the medical evidence in support of the ALJ's finding that "[i]n terms of the claimant's alleged back and leg pain, overall the evidence of record does not support the degree of limitation alleged"); 17 (the ALJ notes that plaintiff and her husband report

---

[2]The ALJ additionally gave "partial weight" to the January 14, 2013, and May 1, 2013, state agency medical consultants' conclusions that plaintiff could perform a full range of medium exertional work, finding that evidence received by the ALJ after these reports were made indicate that plaintiff is further limited to performing light exertional work. (Tr. 17-18).

6

that plaintiff can complete light cooking, housework, and shopping and is able to drive, which "is not consistent with the degree of symptoms alleged and therefore weakens her credibility"; 17 (the ALJ accorded Dr. Morris's report great weight because it was "consistent with [Dr. Morris's] clinical findings," it was consistent with plaintiff's "treating medical providers," and it was consistent with "claimant's conservative treatment history and her reported activity level").

Second, plaintiff's requirements misstate the standard set in Mascio and Monroe. Here, the ALJ assessed plaintiff's capacity to stand, walk, and sit, six hours each during an eight-hour workday in his assessment of Dr. Morris's report, plaintiff points to no contrary evidence in the record that the ALJ did not consider, and the court finds no other inadequacies the ALJ's analysis to frustrate meaningful review. Therefore, in this case, remand is not required for an explicit function-by-function analysis. Here, unlike in Mascio, this court is not "left to guess about how the ALJ arrived at his conclusions." 780 F.3d at 637.

Plaintiff further argues that the ALJ did not adequately explain his analysis of plaintiff's complaints of pain regarding her standing and walking limitation, citing the Fourth Circuit's recent decision in Lewis v. Berryhill, 858 F.3d 858 (4th Cir. 2017). (DE 24 at 9-10). Plaintiff argues that the reasons offered by the ALJ for discounting plaintiff's allegations of pain were inadequately reviewed by the magistrate judge and inadequately explained by the ALJ as required by Mascio and Lewis. (Id. at 9-11).

The ALJ must follow "a two-step analysis when considering a [plaintiff's] subjective statements about impairments and symptoms," first turning to "objective medical evidence showing a condition that could reasonably produce the alleged symptoms," and then evaluating the "intensity, persistence, and limiting effects of the [plaintiff's] symptoms to determine the extent to which they

limit the [plaintiff's] ability to perform basic work activities." Lewis, 858 F.3d at 865-866 (citations omitted). "The second determination requires the ALJ to assess the credibility of the plaintiff's statements about symptoms and their functional effects." Id. at 866.

Here, the ALJ followed this process, and the court finds that substantial evidence supports the ALJ's conclusion that plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (Tr. 15).

First, the ALJ noted that plaintiff's medical care was conservative in nature, where it was recommended that she engage in physical and acquatic therapy, regulate pain with medication, and receive steroid injections. Plaintiff argues that plaintiff's "conservative care" does not offer support for the ALJ's determination because plaintiff could not afford more care than she obtained and because plaintiff need not show "debilitating symptoms," only that she cannot be on her feet all day. However, the ALJ did not consider what care plaintiff could afford or whether plaintiff showed "debilitating symptoms"; the ALJ focused on what care plaintiff's medical providers recommended, which was consistently conservative in nature. See Dunn v. Colvin, 607 F. App'x 264, 275 (4th Cir. 2015) ("Because it is well established in this circuit that the ALJ can consider the conservative nature of a claimant's treatment in making a credibility determination, we hold that there is substantial evidence in the record to support the ALJ's decision to take the conservative nature of Appellant's treatment into consideration in finding her claim of total disability incredible."). As explained by the magistrate judge, the care instructions received by plaintiff are in sharp contrast to the "conservative care" found in Lewis, where the court found that the ALJ mischaracterized the treatment record as "conservative" where plaintiff had extensive documentation of "degenerative changes in her spine, a sclerotic lesion centered in the left humeral metadiaphysis, lupus with

8

corresponding symptoms, spinal stenosis, and injury to her brachial plexus and corresponding nerve damage" as well as a developed record of taking "powerful analgesics" and multiple surgeries, including one to "remove her left rib to alleviate pain."  858 F.3d at 868-69.

Second, the ALJ found that plaintiff's physical exam results were stable, although plaintiff disputes this assertion.  The ALJ provided an overview of plaintiff's medical records noting that plaintiff's earliest physical exam results in September 2012 indicate "no motor or sensory deficits," with a straight leg raise test that was negative bilaterally, and that plaintiff ambulated with a normal gait. (Tr. 15).  X-ray results from September 12, 2012, showed evidence of multi-level degenerative disc disease, most severe at L5-S1 with anterior and posterior osteophytes noted, which was treated with a trigger point injection.  (Id.)

Similarly, at the end of the period at issue, on August 22, 2014, plaintiff "was able to rise from a seated position appropriately," with limited lumbar mobility but a negative bilaterally straight leg raise test, with trigger point tenderness of her left sacroiliac joint but no focal motor sensory deficits noted.  (Id. at 16).  At this time, Montgomery refilled plaintiff's oxycodone prescription. (Id.)

During the intervening time, the ALJ noted "the medical evidence of record documents ongoing conservative treatment with little change in physical exam results."  The ALJ reviewed that plaintiff reported a significant worsening of symptoms in May of 2013 which led to an epidural steroid injection, but at this time plaintiff was ambulating without assistance and with a normal gait and Montgomery stated that plaintiff's physical exam results remain unchanged.  (Id.)  At this time, Montgomery added tramadol to the plaintiff's medication regimen.  (Id.)  Additionally, there was another sacroiliac trigger point injection in January 7, 2014, but  plaintiff was ambulating without

9

assistance and with a normal gait and in January of 2014, plaintiff's straight leg raise testing was negative bilaterally and there was no evidence of focal or motor deficits. (Id.).

Third, the ALJ cited to plaintiff's part-time work after she filed for disability and her daily activities as inconsistent with her alleged limitations, noting that plaintiff and her husband reported that plaintiff could "complete light cooking, house work, and shopping" and "was able to drive." (Tr. 17). The court may not reweigh this evidence, make credibility determinations, or supplant the ALJ's judgment with the court's own. Johnson, 434 F.3d at 654. Accordingly, viewing the record as a whole, the court concludes that substantial evidence supports the ALJ's credibility determination.

2. Medical Opinion Evidence

Plaintiff additionally argues that the ALJ erred in weighing the opinions of FNP Heather Montgomery and Dr. Gary Smoot.

Regardless of the source, the ALJ must evaluate every medical opinion received. 20 C.F.R. §§ 404.1527(c); 416.927(c). In general, the ALJ should give more weight to the opinion of an examining medical source than to the opinion of a non-examining source. Id. §§ 404.1527(c)(1), 416.927(c)(1). Additionally, more weight is generally given to opinions of treating sources, who usually are most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability, than non-treating sources, such as consultative examiners. Id. §§ 404.1527(c)(2), 416.927(c)(2). Though the opinion of a treating physician is generally entitled to "great weight," the ALJ is not required to give it "controlling weight." Craig, 76 F.3d at 590. In fact, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Id.

If the ALJ determines that a treating physician's opinion should not be considered controlling, the ALJ must then analyze and weigh all the medical opinions of record, taking into account the following non-exclusive list: 1) whether the physician has examined the applicant, 2) the treatment relationship between the physician and the applicant, 3) the supportability of the physician's opinion, 4) the consistency of the opinion with the record, 5) whether the physician is a specialist, and 6) any other relevant factors. Johnson, 434 F.3d at 654 (citation omitted).

Nurse practitioners are not considered "acceptable medical sources." See 20 C.F.R. §§ 404.1513(d)(1); 416.913(d)(1). Rather, they are characterized as "other sources." Id. Information from "other sources" cannot establish the existence of a medically determinable impairment; however, "other sources" can "provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." SSR 06–03p, 2006 WL 2329939, at *2.

First, regarding family nurse practitioner Heather Montgomery, plaintiff argues that the ALJ erred in summarily declaring that a she is not an acceptable medical source and not entitled to weight. (DE 24 at 16). Plaintiff argues that in the Fourth Circuit, courts have stated that nurse practitioner's opinions deserve the same weight as that of a treating physician when they render an opinion under the supervision of a physician and within the course and scope of supervised treatment. (Id. at 15).

Indeed, in Argeris v. Colvin, the court determined that an ALJ erred in discounting the weight of a treating physician's assistant ("PA"). 195 F. Supp. 3d 812, 815–16 (E.D.N.C. 2016). The PA in that case had been treating the plaintiff for several years under the supervision of a physician. Id. at 815. During the course of treatment, the plaintiff had a Physical Residual Functional Capacity Questionnaire completed by the PA and signed by the physician. Id. at 815-16.

11

The court found that the ALJ erred when he assumed that the questionnaire was the opinion only of the PA and not of the physician. Id. at 816. The court reasoned: "[I]f the facts of treatment show the primary caregiver is a non-acceptable medical source, such as a nurse practitioner, and a doctor adopts the findings and information about the patient and is engaged in the treatment, the nurse practitioner's evaluation becomes the report of the doctor." Id. at 815 (quoting Palmer v. Colvin, No. 5:13-CV-126-BO, 2014 WL 1056767, at *2 (E.D.N.C. Mar. 17, 2014)).

Here, however, plaintiff does not argue, and records do not indicate, that a physician reviewed or signed off on any of Montgomery's assessments nor is there any indication that Montgomery treated plaintiff under the supervision of a physician at any time, including when Montgomery recommended plaintiff's work restrictions on October 3, 2012 and May 14, 2013. (See, e.g., Tr. 204-206; 279-80).

Additionally, after the ALJ concluded that Montgomery's work restrictions are to be given little weight because she is not considered an acceptable medical source, the ALJ then also found that her work restrictions are entitled to limited weight because they are "not supported by her clinical findings, which document negative straight leg raise testing, intact gait, and only mild limitation of motor strength of her extremities." (Tr. 17). Finally, the ALJ notes that although the record provides that Montgomery recommended plaintiff should remain out of work for a limited amount of time, there is no indication that Montgomery reevaluated plaintiff's ability after that time elapsed. (Id.).

Substantial evidence supports the weight given to the opinions of FNP Montgomery; therefore, remand is not warranted on this issue.

Plaintiff additionally argues the ALJ erred in failing to weigh Dr. Smoot's opinions. (DE 24 at 18).

As reviewed by the magistrate judge, there is one treatment note from Dr. Smoot dated May 14, 2013. Dr. Smoot's impression included "[m]arked degenerative disc disease changes at L5-S1" and "central and right paracentral disc herniation." (Tr. 276). These treatment notes also indicate that plaintiff demonstrated "functional active lumbar range of motion," had no marked swelling or lumbrosacral spams but did experience some soreness, and previous x-rays showed no evidence of spondylolisthesis or scoliosis. (Id.). Dr. Smoot's proscribed percocet, discussed physical therapy and a home exercise program, and stated that "[i]njections appear to be necessary," scheduling a steroidal injection, with instructions to "[f]ollow up 1-2 weeks after the injection." (Id.) Dr. Smoot additionally stated that "[o]ut of work restrictions are given." (Id.). Two days later plaintiff received a right L5/S1 lumbar epidural steroid injection and was told to follow up in 1-2 weeks with Dr. Smoot, which it appears did not occur. (Id. at 275).[3] The ALJ cited to the exhibit containing Dr. Smoot's treatment note and noted that plaintiff received an epidural steroid injection; however, plaintiff is correct that the ALJ did not discuss this treatment note in his decision. (See Tr. 16 (citing Exhibit 4F)).

"Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [the plaintiff's] impairment(s), including . . . symptoms, diagnosis and prognosis, what [the plaintiff] can still do despite impairment(s), . . . and [the plaintiff's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1). Plaintiff argues that Dr. Smoot's

---

[3]The record contains two contemporaneous notes from Montgomery, directing that plaintiff perform seated work only for a limited time and that plaintiff remain out of work for a specific period of time. (Tr. 279 (May 9, 2013, note directing that plaintiff be limited to sit-down work only for one month); 280 (May 30, 2013, note directing that plaintiff remain out of work until July 9, 2013)).

13

direction that "out of work restrictions are given" qualify as a "medical opinion" that should have been discussed by the ALJ in that "a restriction on work activity is, by definition, a functional limitation." (DE 24 at 18).

It is unnecessary for the court to determine whether these words in the limited context of this one treatment note are a medical opinion in that, even assuming the ALJ's failure to mention Dr. Smoot's report was error, the error was harmless because the report "does not materially contradict" the evidence adopted supporting the ALJ's RFC determination. Morgan v. Barnhart, 142 F. App'x 716, 723 (4th Cir. 2005) (finding that even if treating physician's testimony, that it would be hard for plaintiff to stand for five-hour work day, was a "medical opinion," any error by the ALJ in failing to give the proper weight to this testimony is harmless where the (assumed) medical opinion did not "materially contradict" that which the ALJ based his RFC's determination); Rivera v. Colvin, No. 5:11-CV-569-FL, 2013 WL 2433515, at *3 (E.D.N.C. June 4, 2013) (" an ALJ's failure to expressly state the weight given to a medical opinion may be harmless error, when the opinion is not relevant to the disability determination or when it is consistent with the ALJ's RFC determination"). Dr. Smoot's report does not state that plaintiff is more limited in her functioning than that expressed in the ALJ's RFC determination; instead, Dr. Smoot concludes that plaintiff's condition warrants epidural steroid injections that necessitate "out of work restrictions," such as the limited work restrictions plaintiff received here from Montgomery. See Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir.1986) ("If a symptom can be reasonably controlled by medication or treatment, it is not disabling.").

Accordingly, the ALJ's failure to ascribe weight to the opinion of Dr. Smoot is harmless error.

## CONCLUSION

Based on the foregoing, the court ADOPTS the recommendation in the M&R. Plaintiff's motion for judgment on the pleadings (DE 12) is DENIED, and defendant's motion for judgment on the pleadings (DE 16) is GRANTED. The clerk of court is DIRECTED to close this case.

SO ORDERED this the 20th day of September, 2017.

LOUISE W. FLANAGAN
United States District Judge